[Crim. No. 2380. Second Appellate District, Division One.—July 19, 1933.]

THE PEOPLE, Respondent, v. JOHN L. VAN EVERY, Appellant.

Crop & Crop and William Christensen for Appellant.

U. S. Webb, Attorney-General, and Bayard Rhone for Respondent.

DESMOND, J., *pro tem.*—Defendant appeals from a judgment whereby he was found guilty of the crime of assault with a deadly weapon with intent to commit murder. When arraigned he had entered pleas of not guilty and not guilty by reason of insanity to that charge as also to another count in the information charging him with attempted robbery. The judge who tried the case without a jury found the defendant not guilty of attempted robbery, and largely upon that fact defendant bases his appeal, contending "that the finding by the trial court on count one of said information, charging the defendant with the crime of attempted robbery is in effect, in view of all the evidence, a finding that no assault was made by appellant upon the complaining witness". Appellant also contends that the evidence was insufficient as a matter of law to sustain the judgment of conviction which was entered, arguing that "in the crime of assault with intent to commit murder the guilty person must specifically contemplate the taking of life and commit the assault with such intent", citing the case of *People* v. *Weston*, 32 Cal. App. 571 [163 Pac. 691], to the effect that "if in truth he does not intend to kill he is not guilty of the crime of assault with intent to commit murder".

In the instant case the defendant had gone to the office of the complaining witness, a physician who had treated him some years previously and against whom, according to the evidence, he held a grudge for the double reason that in the opinion of the defendant the doctor had overcharged him and also had made an erroneous diagnosis of his ailment, and in treating him had injected poison into his system. The defendant telephoned the doctor's office for an appointment and on being admitted from the waiting room to the physician's private office pulled a revolver from his left-hand overcoat pocket, aimed it with his left hand at the doctor, saying, "Give me all you have"; then, as the doctor arose from his chair commanded him to get down on the floor. Instead, the doctor jumped through an open door into an adjoining treatment room. Defendant followed and as he came through the doorway the doctor grappled with

him trying to hold defendant's left arm, the one holding the gun, up in the air. The doctor testified that he noticed in the struggle that he was being hit on the back of the head, that "the pain was terrific and I bled profusely", that the defendant "put his right arm up on his left hand, that I was holding up in the air and then two shots were fired". Finally the doctor knocked the defendant down, falling upon him, all the time holding the hand of the defendant that grasped the gun in position where it did not actually aim at the physician's body, although, when discharged, the bullets, according to the testimony, came as near to him as they possibly could and not hit him. Not until defendant was prone upon the floor with his pistol-bearing arm outstretched did the doctor succeed in taking that weapon from him. Shortly thereafter while police officers were looking about the premises the physician saw upon the floor of the treatment room, where he had suffered blows upon the back of his head while struggling with defendant, a hammer which he had never seen before, this hammer being wrapped "over the driving surface" with cloth. A Mr. Cochran, who was in the waiting room of the physician's office at the time this disturbance started, testified that he kicked open a door and saw the doctor and defendant scuffling on the floor, that the doctor was bleeding badly and had injuries on his head, that "there was so much blood on the head that I could not see the extent of the injuries". Introduced in evidence was a smock which the physician stated he was wearing at the time of his struggle with the defendant and which was stained with blood which, according to the doctor's testimony, came from the wounds upon his head. The doctor testified that he did not see a hammer in either of defendant's hands, but "from the violence of the concussion and the injury produced it would have to be something of an object of that description", and from the evidence it appears that in the early part of the altercation while the left hand of the defendant grasped the gun his right hand was free. Defendant took the witness-stand, but gave no testimony about the hammer that was introduced in evidence. He did not disclaim ownership of it, but said that on December 11, 1932, the date of the offense charged, "I was not myself; I don't know just what I did."

■ Disregarding the revolver as a weapon, was there sufficient evidence before the court to justify a finding that the defendant rained blows upon the head of the physician with this hammer? We think there was. Since a deadly weapon is one likely to produce death or great bodily injury (3 Cal. Jur. 206), it will not be contended seriously that in such a case as this a hammer is not within that class. This brings us to the question of intent. The Weston case, *supra*, says: "What that intent was must be determined from all the circumstances—among them the character of the weapon and the consequences likely to follow the use made of the weapon." Applying this rule to the present case, if the learned trial judge ignored altogether the testimony directed toward proof of attempted robbery by means of a revolver and considered only what happened in the treatment room he would have been warranted in finding that an assault with intent to murder had been committed with a deadly weapon, to wit, a hammer. ■ Further, it may be said that in our opinion the court would have been justified in finding from the evidence that any attempt at robbery was concluded the instant the doctor jumped through the open door of the treatment room and that thereafter the purpose of the defendant became one of assault with intent to murder by means of a loaded revolver. ■ Under this view of the case we feel that it is unnecessary to give further consideration to the claim of appellant that the finding of not guilty on count one "is in effect a finding that no assault was made by the appellant upon the complaining witness".

Judgment affirmed.

Conrey, P. J., and York, J., concurred.